OPINION
David A. Kasser, defendant-appellant, appeals his conviction entered upon a jury verdict in the Franklin County Court of Common Pleas for burglary, a violation of R.C. 2911.12.
On March 6, 2000, Bernadette Munsell, a resident of Westerville, Ohio, awoke in her home at approximately 1:15 a.m. when she heard a car with a loud muffler on her street. Munsell, testifying at appellant's trial, stated the loud muffler "struck me as odd because no one in my neighborhood would have a car with that problem. So it startled me and it woke me up." She testified she saw the vehicle's headlights on her bedroom ceiling, indicating the vehicle was turning around. Munsell commented she went to her window to watch the vehicle because the street loops around, making it unnecessary for vehicles to turnaround in a driveway.
Munsell testified she watched the tail lights of the vehicle travel away from her home until "all of a sudden they were not there any more." She stated that "shortly after that I saw feet coming from [the] direction where the car was." She testified she saw an individual walk between two homes across the street and enter an open garage of one of the homes. Munsell dialed 911 on her telephone and told the operator she had just observed an individual with a flashlight go into her neighbor's garage.
Mark LeMaster, the owner of the home Munsell had seen the individual enter, testified he received a phone call from a police dispatcher who told him to "get the kids or anybody else who was in the house and to lock ourselves in our room because they believed that someone was in our house." Several Westerville Police officers were dispatched to LeMaster's home. Officer Thomas Bobovnyk testified he was the first officer to arrive at the scene. He stated he went directly to LeMaster's backyard and discovered the back door to the house was standing partially open. Other officers went inside the LeMaster's residence to check on the safety of the family. The officers were unable to locate the individual Munsell had witnessed entering the LeMaster home. However, LeMaster testified when he came downstairs, he noticed his wallet, which he left on the kitchen counter, was missing. LeMaster also testified the back door to his home was closed and locked before they went to sleep that evening.
Officer Bobovnyk testified that during the search of the area around the LeMaster residence, he noticed a car parked near the front of the house. He stated when he felt the hood of the car it was very warm. Munsell later identified the car as the same car she had seen driving down the street just prior to observing the individual enter the LeMaster home. Lawrence Bitler, an automobile supervisor for the city of Westerville, testified that when he examined the car, he found the exhaust pipe broken around the converter causing it to make a loud noise. A picture of the broken exhaust pipe was also entered as evidence. Inside the vehicle, Officer Bobovnyk found a wallet and keys still in the ignition switch. The car was registered to appellant and the wallet contained appellant's driver's license. A few days after the incident, LeMaster's wallet was found lying adjacent to the driveway of a home four doors east of his home.
Appellant was indicted for the burglary of LeMaster's home. A trial was held in October 2000. On October 22, 2000, a jury found appellant guilty of burglary and not guilty of theft. Based in part upon appellant's seven prior theft offenses, the court sentenced appellant to serve six years in prison for his burglary conviction. Appellant appeals his conviction and presents the following five assignments of error:
 I. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 II. THE APPELLANT WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO ALLOW DEFENDANT TO PRESENT EVIDENCE OF HABIT UNDER RULE 406 OF THE OHIO RULES OF EVIDENCE.
 III. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE EVIDENCE AGAINST THE APPELLANT WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.
 V. APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
We will discuss appellant's assignments of error out of the order in which they have been presented.
Appellant argues in his fourth assignment of error that insufficient evidence was presented to support his conviction. Appellant argues that it "is clear from the transcript that * * * it is unlikely based on the evidence that [appellant] was anywhere but at his girlfriend's home at 1:15 a.m. that morning." Appellant contends the circumstantial evidence used to show he was at the LeMaster residence at 1:15 a.m. "is not convincing that [he] is guilty of Burglary, let alone guilty beyond a reasonable doubt."
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998),523 U.S. 1125, 118 S.Ct. 1811. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied 525 U.S. 1077, 119 S.Ct. 816. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Id. at 444.
R.C. 2911.12(A)(1) states that no person, by force, stealth, or deception, shall "[t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense." Regarding the determination of whether the offender had purpose to commit a criminal offense, "the intent of an accused is only in the mind and is not ascertainable by another, it cannot be proved by direct testimony, but rather must be determined from the surrounding facts and circumstances." State v. Conway (Jan. 18, 2001), Cuyahoga App. No. 77436, unreported.
In the present case, evidence was presented through Munsell's testimony, that an individual drove by the LeMaster residence, turned their vehicle around, stopped the vehicle in front of the LeMaster residence, and entered the LeMaster residence through the garage. Evidence that the individual was a trespasser was given by LeMaster, who testified he had not given anyone permission to enter his home the night of the incident. Additionally, the fact that the individual was not present when the officers arrived and the fact that the door leading from the home to the backyard was left ajar indicates the individual knew he was trespassing and was attempting to escape the police.
Concerning whether appellant was the individual that had trespassed, Munsell testified that the trespasser "was not very tall. He was stocky and he had kind of an unusual walk. * * * It was kind of a bouncy toes out sort of a walk * * * sort of a bouncy walk." Mitch Hammond, a detective with the Westerville Police Department, testified that appellant had "kind of a slow balancing walk." Detective Hammond stated that when appellant walked, "his feet appeared to be kind of pointed out." Stephanie Crum, appellant's girlfriend, testified that appellant "walked like an old person." Appellant's driver's license, submitted as evidence because it was found by police in appellant's car, stated appellant was five feet six inches tall and weighed one hundred eighty-five pounds.
Additionally, appellant's car was found parked in front of the LeMaster residence. Munsell testified appellant's car was the same car she had observed driving by the LeMaster home just prior to witnessing an individual enter LeMaster's garage. Appellant's wallet and keys were found inside his car and Officer Bobovnyk testified the hood of appellant's car was very warm to the touch shortly after the incident. The fact that LeMaster's wallet was missing shortly after the incident and then found on the ground near his home tends to show the trespasser committed a theft offense while inside the home.
Reviewing the above evidence in a light most favorable to the state presents the following scenario: (1) on March 6, 2000, appellant drove by the LeMaster residence at approximately 1:15 a.m.; (2) upon seeing the garage door open, appellant parked his car in front of the LeMaster home; (3) appellant first went into LeMaster's backyard to look for a possible second escape route, and then entered the home through a door inside the open garage; (4) appellant took LeMaster's wallet, which he found laying on the kitchen counter and left the home through the back door of the home, exiting into LeMaster's backyard; (5) appellant may have left in a hurry based upon the fact that he left his wallet and keys in his car and left his car parked in front of the home; and (6) appellant's hurried exit may have been caused by either hearing the phone call from the police dispatcher to LeMaster while appellant was in the home, or by seeing Westerville Police vehicles arriving in front of LeMaster's home. Accordingly, we find that a rational trier of fact could have found the essential elements of burglary as stated in R.C. 2911.12
proven beyond a reasonable doubt. Appellant's fourth assignment of error is overruled.
Appellant argues in his third assignment of error that his conviction was not supported by the manifest weight of the evidence. In support of his contention, appellant claims the jury should have given greater weight to Crum's testimony that appellant was with her at the time of the incident.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported, following Clemons, at 444. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Thompkins, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), 527 U.S. 1042, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997),118 Ohio App.3d 371, 377.
Crum testified that on the night of the incident, appellant left her home at 10:00 p.m. with his daughter and his dog. She stated appellant was going to walk his dog that night near Hoover Dam, which is located approximately two blocks from the LeMaster's residence and ten miles north of appellant's residence. Crum testified that appellant returned to her home around 12:30 a.m. without his dog or car. Crum further testified appellant remained in her home until the next morning. At the time she testified, Crum was pregnant with appellant's child.
Ethel Watkins, a resident in appellant's neighborhood, testified that around midnight on March 5, 2000, she saw appellant walking down the street carrying a bag. Watkins further testified that when she asked appellant why he was walking, he told her that his car had broken down.
If a trier of fact were to believe Crum and Watkins' testimonies, they could conclude appellant had an alibi and was not at the scene of the crime when the crime occurred. However, there are several reasons why a trier of fact could have questioned Crum and Watkins' credibility. According to the theory advanced by appellant's trial counsel, appellant drove his vehicle to Hoover Dam to walk his dog, left his vehicle in front of the LeMaster home "so that the car would not get sideswiped," and then walked back to his home approximately ten miles away because of car problems, buying sandwiches for himself and his girlfriend around midnight. However, the scenario seems rather unlikely[1] considering the fact appellant left his keys and wallet in his car, provided no explanation how he paid for the sandwiches without his wallet, parked his car several blocks from Hoover Dam at a location seldom used for parking, and that his car was still warm when it was found shortly after the burglary. Additionally, Munsell's testimony that: (1) she saw a car closely resembling appellant's car drive by her house at 1:15 a.m.; (2) the car made a loud noise similar to the noise appellant's car made with the broken exhaust pipe; (3) she saw an individual resembling appellant and walking like appellant coming from the direction where she had last seen the car; and (4) appellant's car was found near the location Munsell had last seen the car, weighs heavily against appellant's version of the events.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's conviction was against the manifest weight of the evidence. See Smith, at 114. Appellant's third assignment of error is overruled.
Appellant argues in his first assignment of error that he was denied his right to effective assistance of counsel. Appellant contends his counsel was ineffective during seven crucial aspects of the trial: (1) counsel failed to ask questions of jurors during voir dire; (2) counsel failed to object to leading questions; (3) counsel failed to object to hearsay evidence; (4) counsel failed to poll the jury; (5) counsel failed to make a motion for an in camera review of Munsell's out of court statement to Westerville Police pursuant to Crim.R. 16(B)(1)(g); (6) counsel failed to challenge a juror for cause; and (7) counsel failed to object to prosecutorial misconduct during voir dire and closing arguments. We will address appellant's arguments in the order they have been presented.
"Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial." State v. Lindsey (2000), 87 Ohio St.3d 479, 789, certiorari denied 531 U.S. 838,121 S.Ct. 99, following Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064. "The burden rests upon appellant to show how counsel breached the duty to provide reasonable representation." State v. Lester (1998), 126 Ohio App.3d 1, 5. Additionally, appellant must show prejudice, demonstrating that but for counsel's errors, the result of the proceedings would have been different. State v. Monroe (Sept. 25, 2001), Franklin App. No. 01AP-275, unreported.
Appellant argues his trial counsel was ineffective because he failed to ask questions of jurors during voir dire. Appellant contends the fact that trial counsel "fail[ed] to ask questions of potential jurors during voir dire is per se ineffective assistance of counsel." Appellant claims if the jurors had been properly questioned, many of the eventual members of the jury would have disclosed the fact that they had been victims of a crime, which may have affected their ability to be a fair and/or impartial juror.
Trial tactics that are debatable generally do not constitute a deprivation of effective counsel. State v. Phillips (1995),74 Ohio St.3d 72, 85. "[V]oir dire is largely a matter of strategy and tactics." Lindsey, at 489. "The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." State v. Evans (1992), 63 Ohio St.3d 231, 247, certiorari denied 506 U.S. 886, 113 S.Ct. 246. Additionally, great deference is given to decisions by trial counsel during voir dire because trial counsel sees and hears jurors and is in the best position to determine whether voir dire questions are needed. State v. Sanders (2001),92 Ohio St.3d 245, 274.
A review of the voir dire portion of appellant's trial fails to show he was denied his right to a fair trial based upon the alleged ineffectiveness of his trial counsel. Although appellant's trial counsel did not ask any individual questions to potential jurors, counsel did ask all of the potential jurors many general questions. Appellant's claim that "[m]any of the eventual members of the jury were never questioned as to whether having been a victim of a crime would affect their ability to be fair and/or impartial as a juror" is incorrect. A review of the transcript shows that before appellant's counsel questioned the jury, the prosecution asked the potential jurors whether anyone had been a victim of a burglary. Based upon the potential juror's answers, appellant's trial counsel used two peremptory challenges to excuse two potential jurors who had indicated they had been burglary victims.
Appellant also argues his trial counsel was ineffective for not questioning individual jurors "to determine whether they understood the reasonable doubt, burden of proof, presumption of innocence, and the defendant's right not to testify" during voir dire. A review of the transcript shows these legal concepts were explained by the court during jury instructions and a presumption exists that a jury has followed the instructions given to it by the trial court. See State v. Nichols (June 27, 2000), Franklin App. No. 99AP-1090, following State v. Murphy (1992), 65 Ohio St.3d 554, 584.
Appellant contends his trial counsel was ineffective because he failed to object to leading questions and hearsay evidence. However, "Ohio courts have consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." Monroe, supra.
Appellant also argues his trial counsel was ineffective because he failed to poll the jury. Counsel's decision not to poll the jury cannot be considered a trial tactic because this is the closing stage of the trial. Monroe, supra. However, appellant provides no evidence that counsel's failure to poll the jury was prejudicial.
In addition, appellant claims his counsel was ineffective because he failed to make a motion for an in camera review of Munsell's out of court statement to Westerville Police pursuant to Crim.R. 16(B)(1)(g), which states:
 * * * Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
Appellant contends Munsell's testimony that the amount of time between when she saw appellant's car drive by her home and when she saw the feet of the trespasser was "a second or two," contradicted Munsell's written statement she made to Westerville Police that the time span was "[a]bout 30 seconds."
The first difficulty with appellant's argument is that the written statement appellant relies upon was an attachment to his appellate brief and does not appear in the record. "It is fundamental that appellate review is limited to the record as it existed at the time of judgment." Associated Estates Realty Corp. v. Roselle (June 22, 1999), Franklin App. No. 98AP-1133, unreported. Therefore, it would be improper for us to determine appellant's trial counsel was ineffective based upon evidence outside of the record. The second difficulty is that the difference between Munsell's two statements is negligible and it is unlikely that such a discrepancy would have had an impact on the juror's determination of her credibility.
Appellant contends his counsel was ineffective for failing to challenge a juror for cause. However, a review of the record shows the juror appellant claims his trial counsel should have challenged for cause was removed by his counsel through the use of a preemptory challenge. Therefore, appellant cannot show that his counsel was ineffective in this instance because he cannot demonstrate prejudice.
Appellant further argues his counsel was ineffective because he failed to object to prosecutorial misconduct during voir dire and closing arguments. The claimed misconduct committed by the prosecutor involved alleged misstatements of the standard of proof and of the facts. A review of the transcript shows the trial court gave proper jury instructions and even noted that "[c]losing arguments are not evidence and should not be construed as evidence." As a reviewing court, "we must assume that the jurors followed the court's instructions." Lester, supra, at 8.
Accordingly, after having reviewed the record and considering the evidence presented against appellant, we find appellant has failed to demonstrate his trial counsel was ineffective. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error the trial court erred when it refused to allow appellant to present evidence of habit pursuant to Evid.R. 406. Appellant's counsel attempted to introduce evidence from his employer that appellant had left the keys in the ignition of a car on three occasions over the course of a year. The purpose of the evidence was to provide a different explanation as to why appellant's car was found with the keys still in the ignition.
The trial court has broad discretion in the admission of evidence unless it has clearly abused its discretion and the defendant has been materially prejudiced, thereby, an appellate court should be slow to interfere. Power v. Kirkpatrick (July 20, 2000), Franklin App. No. 99AP-1026, unreported, following State v. Maurer (1984), 15 Ohio St.3d 239,265. Evid.R. 406 states:
 Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.
"In order to introduce evidence of his `habit' * * * [d]efendant was required to show that he meets a specific stimulus with a resulting response that approaches invariability, and that the stimulus for the specific response occurred on a particular occasion." State v. Young (May 1, 1998), Montgomery App. No. 16471, unreported, discretionary appeal not allowed 83 Ohio St.3d 1435 . "Evidence as to one or two isolated occurrences does not establish a sufficient regular practice for admission pursuant to Evid.R. 406." Bollinger v. Mayerson (1996),116 Ohio App.3d 702, 715.
According to appellant's trial counsel, appellant's former employer would have testified that appellant "on about three occasions over the course of a year of employment had left his keys in the ignition of the car." Appellant's counsel also stated the employer would have testified that on "several occasions," appellant left his keys and wallet in the company vehicle and that he had been "very forgetful." Appellant's counsel further stated that Crum would have offered "the same testimony where she'll be speaking to his habits, of leaving their keys."
When considering the frequency of the alleged habit evidence that would have been offered, we find the trial court did not abuse its discretion when it denied appellant the opportunity to present this evidence. The court could have found that although appellant had left his keys in the ignition three times in a year or even on "several occasions," this was not a sufficient number of times to establish a regular practice or invariability to warrant its admission as evidence of habit pursuant to Evid.R. 406. Appellant's second assignment of error is overruled.
Appellant argues in his fifth assignment of error he was denied a fair trial based upon prosecutorial misconduct. The specific instances appellant cites to are: (1) the prosecutor during voir dire and closing arguments wrongly defining what constituted reasonable doubt; (2) the prosecutor asking leading questions of witnesses for the state; (3) the prosecutor introducing hearsay evidence; and (4) the prosecutor misrepresenting the evidence presented at trial during closing arguments.
"The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantive rights of the accused." State v. Moore (1998), 81 Ohio St.3d 22, 33. Prosecutors are given wide latitude in closing arguments. State v. Davis (1996),76 Ohio St.3d 107, 119. The closing argument is viewed in its entirety to determine if an appellant was prejudiced. State v. Ballew (1996),76 Ohio St.3d 244, 255, certiorari denied (1997), 519 U.S. 1065,117 S.Ct. 704.
A review of the complete closing argument reveals appellant was not prejudiced by any improper remarks by the prosecution. First, "we must assume that the jurors followed the court's instructions." Lester, supra, at 8. The assumption that the jurors followed the court's instructions also applies to any alleged misstatement by the prosecution concerning what constitutes reasonable doubt during voir dire. Also, a review of closing arguments shows appellant's counsel did not object to the alleged improper statements. "Failure to object to alleged improper statements made by a prosecutor during closing arguments waives all but plain error." Nichols, supra. A review of the evidence presented shows that plain error did not occur during closing arguments.
Finally, many of the remarks appellant claims were improper were not improper. For example, appellant argues the prosecution mislead the jury by stating that appellant's wallet contained a towing business card, a credit card, and a valid AAA card. Even though no witness testified concerning the contents of appellant's wallet, the wallet was entered as evidence. A review of the contents of appellant's wallet shows it did contain a towing business card, three credit cards, and a AAA card valid at the time of the incident.
Even though Evid.R. 611(C) states that "[l]eading questions should not be used on the direct examination of a witness," a review of the transcript shows appellant's trial counsel did not object to the leading questions. Failure to object to the prosecution's leading questions "constitutes a waiver of any claim of error relative thereto, unless but for the error, the outcome of the trial clearly would have been otherwise." State v. Owens (Feb. 25, 2000), Montgomery App. No. 17394, unreported, quoting State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. Additionally, it is within the sound discretion of the trial court to permit the state to ask leading questions of its own witnesses. State v. Mader (Aug. 30, 2001), Cuyahoga App. No. 78200, unreported, following State v. Miller (1988), 44 Ohio App.3d 42 . Accordingly, we find the prosecution's use of leading questions during direct examination was not reversible error.
Regarding the admission of hearsay evidence by the prosecution, a review of the record shows appellant's trial counsel did not object to the hearsay evidence. Failure to object to the introduction of hearsay evidence waives any claim of error except for plain error. Gray, supra. A review of the claimed hearsay evidence shows that even if it was excluded, the remaining evidence shows the outcome of the trial would not have been any different. Therefore, we find plain error did not occur regarding the introduction of hearsay evidence.
We find appellant has failed to show any alleged misconduct by the prosecution denying him his right to a fair trial. Appellant's fifth assignment of error is overruled.
Accordingly, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and KENNEDY, JJ., concur.
[1] LeMaster testified that cars rarely parked along his street because everyone had driveways. LeMaster further testified that Hoover Dam had a very large parking lot and that there were several gas stations in the area.